UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Big Dipper Entertainment, LLC. et al.,

      Plaintiffs,

v.                        Case No. 07-14716

City of Warren,             Honorable Sean F. Cox

      Defendant.

_____/

## OPINION & ORDER

This matter is currently before the Court on the parties' cross-motions for summary judgment. The parties have briefed the issues and the Court held a hearing on September 9, 2009. For the reasons set forth below, the Court shall grant summary judgment in favor of Defendant with respect to Plaintiffs' federal claims and the Court shall decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

## BACKGROUND

On November 2, 2007, Plaintiffs Big Dipper Entertainment, L.L.C. ("Big Dipper") and Aquarius Investments, L.L.C. ("Aquarius") (collectively "Plaintiffs") filed this action against Defendant City of Warren (the "City of Warren" or "Defendant"), on the basis of federal question jurisdiction. Plaintiffs' Complaint asserts the following five counts: "42 U.S.C. § 1983" (Count I); "Unlawful Creation of the Downtown Development Authority and/or Creation or Expansion of the Downtown District" (Count II); "Vested Right to Operate an SOBS on the

Subject Property" (Count III); "Right to Issuance of an Official Address and Local Approval of a Liquor License and Topless Activity Permit" (Count IV); and "Declaratory and Injunctive Relief Entitlement to Use of Subject Property as a Restaurant/Bar Offering Entertainment by Semi-Nude Performers."

Count I, Plaintiffs' § 1983 claim, is the only federal claim in this action. The remaining claims are state law claims over which this Court may exercise supplemental jurisdiction.

The matter is currently before the Court on the parties' respective summary judgment motions.

Plaintiffs' Motion for Summary Judgment is brought with respect to Plaintiffs' federal claims only. The motion does not seek summary judgment with respect to any of the state law claims. In this motion, Plaintiffs ask the Court to grant summary judgment in their favor with respect to Count I and rule that: 1) the locational restrictions of the challenged ordinances are unconstitutional because they do not leave open adequate alternative avenues of expression; and 2) the SOB licensing ordinances, as applied by the City of Warren, are unconstitutional prior restraints on protected expression

Defendant's Motion for summary judgment seeks summary judgment in its favor with respect to all claims asserted by Plaintiffs.

This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

Both parties complied with the Court's practice guidelines such that: 1) the parties submitted a Joint Statement of Undisputed Material Facts (Docket Entry No. 62) ("Joint Stmt."); 2) Defendant filed its statement of material facts, which Plaintiffs responded to in writing; and 3) Plaintiffs filed their statement of material facts, which Defendants responded to in writing.

The following material facts are gleaned from the parties' statements and the evidence submitted by the parties.

1.      Prior Challenges To Warren's Ordinances:

For several years, the City of Warren has had in place a series of ordinances that relate to sexually oriented businesses ("SOBs").  These ordinances have been challenged in at least two prior actions in this district.  *See 15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F.Supp. 803 (E.D. Mich. 1985); *Warren Gifts, LLC v. City of Warren*, Case No. 02-70062.

In *15192 Thirteen Mile Road, Inc.*, the plaintiffs filed suit under § 1983 challenging the constitutionality of Warren Zoning Ordinance 14.02(C), which regulated the ability of adult businesses to locate within the City of Warren.  At that time, Ordinance 14.02(C) "require[d]: 1) that adult businesses be located on a major thoroughfare, as designated in the Master Thoroughfare Plan; 2) that the proposal site be no closer than 500 feet to the property line of an

3

area zoned residential or an existing residential use; and 3) that the proposed site be no closer than 1000 feet to the property line of another adult business, or to the property line of any church or school." *Id.* at 808-09.  The City of Warren's ordinance was declared partly constitutional and party unconstitutional in *15192 Thirteen Mile Road, Inc.*  Specifically, the court struck down the provision prohibiting SOBs from locating on major thoroughfares as unconstitutional.  The other locational restrictions, however, were found constitutional.  In finding those restrictions constitutional, the court concluded the ordinance was aimed at controlling secondary effects of adult businesses and that the ordinances left adequate avenues of expression available.

       2.      <u>The Challenged Ordinances Here:</u>

In this case, Plaintiffs make two separate constitutional challenges.  First, Plaintiffs claim that the locational restrictions of Section 14.01, prohibiting SOBs from locating in either "the Downtown District" or "within the Downtown Development District,"are unconstitutional and violate the First Amendment because they do not leave open adequate alternative avenues of expression.  Second, they claim that the SOB licensing ordinances, as applied by the City of Warren to Plaintiffs, are unconstitutional prior restraints on protected expression.

       a.      <u>The Locational Restrictions Of Section 14.02(C) Prohibiting SOBs From Locating In Either "The Downtown District" Or "Within The Downtown Development District:"</u>

The minutes of a Warren City Council meeting held on October 11, 2005 reflect that the City Council discussed amending the ordinances for SOBs and include that:

> Scott D. Bergthold stated that this would be a short supplement to the extensive discussion of June 10, 2005, in which amendments that would strengthen the Constitutionality of the code were discussed.  There was previously a presentation before City Council on the extensive secondary effects data it received several months ago.  Tonight, he would add affidavits from the police department and

accompanying Michigan State Police department report outlining illicit sexual activity that has occurred in sexually oriented businesses.  That was further evidence of the negative secondary effectives of adult uses.  The language of the ordinance has been updated and strengthened.  And it took into account recent cases such as those decided since June 10th of this year the 6th Circuit Court of Appeals, upon which the City of Warren relied in adopting this ordinance, including *Cincinnati v. Union Township*, which was decided by the full Court on June 21, 2005.  More recent cases were also included.
. . . .
Mr. Bergthold stated that the questions showed that the colloquy, discussions, and the extensive review of secondary effects information reinforced the fact that City Council was intent on doing what was Constitutionally permissible and sound and also effective to address the negative secondary effects of adult businesses.

Councilwoman Moore stated that this Ordinance was a long time coming, and a great deal of hard work had gone into it.

Chairman Fouts stated that based on the expert witness and the City Attorney's Office, he would vote in favor of this.

Council woman Kamp and Councilwoman Moceri stated that they were in agreement with regard to the suggested amendments and they would be part of the motion.

(Ex. 2 to Def.'s Br.)  A motion was then made to adopt the ordinance with the suggested

amendments, and the motion carried unanimously.  (*Id.*).

Thus, "[o]n October 11, 2005, Warren amended the location criteria for SOBs by

enacting Ordinance 30-961, Section 14.01(s), which provides:

The site for the SOB business must be located more than 750 feet from the nearest lot line any of the following zoning districts: R-1-A, R-1-B, R-1-C, R-1-P, R-2, R-3, R-3-A, R-4, R-5, any mixed residential zone such as Planned Unit Development or the Downtown District.  Defendant's Response Brief Exhibit I; See also Defendant's Motion for Summary Judgment Exhibits 2 and 3.

(Joint Stmt. ¶ 8) (emphasis in original).

"On February 1, 2006, Warren published a Public Notice of its intention to make

additional amendments to Section 14.01(s), specifically giving notice of the intent to add 'a new

provision which prohibits the location of sexually oriented businesses within the boundaries of the Warren Downtown Development Authority.'  Plaintiffs' Motion for Summary Judgment Exhibit 73, p.6 (35A of the Warren Weekly Edition)."  (Joint Stmt. ¶ 12).

"On February 14, 2006, City Council passed a Moratorium on the issuance of any SOB licenses in any area included within the 'Downtown District.'  Plaintiffs' Motion for Summary Judgment Exhibit 21 and 23, 25 (Vogt. dep.) p. 14-16, 28-30."  (Joint Stmt. ¶ 17).

"On March 14, 2006, Council discussed the proposed amendments to the zoning ordinances as reflected in the minutes of the Council meeting.  Defendant's Response Brief Exhibit H."  (Joint Stmt. ¶ 20).

"On March 28, 2006, Warren enacted amended Section 14.01(s), codified as Ordinance 30-964, and Article 21B a/k/a the Urban Design Manual to exclude and/or limit certain uses, including, but not limited to, SOBs.  Defendants's Motion for Summary Judgment Exhibits 5, 10 (Article 21B.17) and Exhibit 11."  (Joint Stmt. ¶ 22).  "Section 14.01(s), as amended March 28, 2006, provides:

> To be consistent with the objective and stated purpose of the Downtown Development Authority Ordinance, Sec. 2-108 et seq., sexually oriented businesses as defined in Chapter 6 of the Code of Ordinances shall be prohibited from locating within the Downtown Development District boundaries as described by Chapter 2 of the Code of Ordinances.  Defendant's Motion for Summary Judgment Exhibit 11.

(Joint Stmt. ¶ 23) (emphasis added).

       b.     The SOB Licensing Ordinances:

Ordinance Section 6.276 *et seq.* was enacted on October 11, 2005 "providing a revised licensing process for SOBs.  Defendant's Motion for Summary Judgment Exhibit 4."  (Joint

Stmt. ¶ 8).

Section 6-284(c) "specifically requires the SOB License applicant to appear in person before the City Clerk and submit a completed application 'on a form provided by the City Clerk.'" (Joint Stmt. ¶ 16). It also requires applications to be notarized. (Def.'s Exhibit 4 at 1). "Section 6-299 requires the Clerk to either grant the license or issue a letter of intent to deny the application within 20 days of its filing." (Joint Stmt. ¶ 18).

Section 6-285(a) provides that a temporary license shall be issued to an applicant "upon the filing of a completed application," valid until a decision of the City to grant or deny a license has been made, which is to occur within 20 days of application.

Section 6-299(b) states that a provisional license shall be issued to any business initiating court action to challenge a license denial, suspension, or revocation. In addition, The City's ordinances provide for prompt review of a revoked license. (*See* Sec. 6-299, in Def.'s Exhibit 4).

On February 14, 2006, Tim Sosnovske hand delivered an application for a SOB license to the City Clerk's office in Warren. (Joint Stmt. ¶ 14). That application was not notarized at that time. (*Id*.).

On March 8, 2006, the Clerk sent a letter to Sosnovske rejecting the SOB License Application. (Joint Stmt. ¶ 19).

ANALYSIS

Because subject matter jurisdiction over this action is based solely on Plaintiffs' § 1983 claim, the Court will address that claim first because if it is dismissed, the Court must consider whether it should exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

7

I.      Plaintiffs' Federal Claims:

Plaintiffs' federal claims, asserted under § 1983, consist of the following two claims: 1) the locational restrictions of Section 14.01, prohibiting SOBs from locating in either "the Downtown District" or "within the Downtown Development District," are unconstitutional and violate the First Amendment because they do not leave adequate alternative avenues of expression available; and 2) the SOB licensing ordinances, as applied by the City of Warren to Plaintiffs, are unconstitutional prior restraints on protected expression and therefore violate the First Amendment.

A.      Are The Challenged Ordinances Unconstitutional Because They Do No Leave Adequate Avenues of Expression Available?

The parties agree that, "an ordinance that imposes geographic restrictions on sexually oriented businesses is constitutional if: (1) the restrictions are aimed at secondary effects of such businesses rather than the content of the expression occurring there, (2) the restrictions are narrowly tailored to serve a substantial government interest, and (3) alternative channels of expression remain available." *Bronco's Entertainment, Ltd. v. Charter Tp. of Van Buren*, 421 F.3d 440, 451 (6th Cir. 2005) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)).

The City of Warren contends that it is entitled to summary judgment because the evidence establishes that it has met the above test.

Plaintiffs, on the other hand, contend that they are entitled to summary judgment because the locational restrictions of the City's 2006 Ordinance do not leave adequate alternative avenues of expression available and are therefore unconstitutional.

8

"It is now recognized that governments have a substantial interest in controlling adverse secondary effects of sexually oriented establishments, which include violent, sexual, and property crimes as well as blight and negative effects on property values." *Richland Bookmart, Inc. v. Knox County, Tennessee,* 555 F.3d 512, 524 (6th Cir. 2009); *see also Bronco's Entertainment, Ltd.*, 421 F.3d at 451 ("The importance of the township's interest in combating the secondary effects of sexually oriented businesses is 'not debatable.'")

The City contends that it adopted the challenged ordinance to combat the secondary effects of sexually oriented businesses:

> In this case, Warren enacted the subject Ordinances after presentation by outside counsel Scott Bergthold, City Attorney George Constance, Assistant City Attorney Annette-Gattari-Ross, the Warren Police Chief, and others, on the negative secondary effects of SOBs.  Exhibits 2, 3, 4,5, (Expert Report of Dr. McCleary), 9, 10 and 11.  Warren relied on 49 studies and reports discussing negative secondary effects of SOBs that had been produced over a span of three decades.  See Exhibits 2, 5 and 9.  The secondary effects studies relied upon by Warren were conducted in jurisdictions with populations ranging from several hundred to several million.  See Exhibit 5, p. 8-9.  The studies relied on by Warren were conducted in the west, southwest, mountain west, midwest, northeast, southeast, and plains regions.  Dr. Richard McCleary points out that despite the demographic diversity, all the studies reviewed arrived at the consensus finding that SOBs have large, significant negative secondary effects.  See Exhibit 5, p.8-9.  Dr. McCleary further recognizes that these are the same reports that have been relied on by legislatures across the country over the last two decades.  See Exhibit 5, p.9.  Dr. McCleary also notes that the Ordinances enacted by Warren are nearly identical to those in other jurisdictions where the studies were completed or relied on – each of which concluded that there is a strong expectation that such ordinances will mitigate crime-related secondary effects from SOBs. See Exhibit 5, p.8 and Appx II-H.

(Def.'s Br. at 9).

Defendant notes that in *Warren Gifts, LLC v. City of Warren*, 02-CV-70062, a similar constitutional challenge was made to Section 14.01(s) and was rejected by the Honorable Robert

Cleland.  At the time of that case, "Section 14.01 (s) contained substantially the same regulations on SOBs in 2002 as exist today, except that the exclusion of SOBs in the Downtown District was first included in October 11, 2005."  (Def.'s Resp. Br. at 4-5).  Judge Cleland concluded that:

> L.   The Warren Zoning Ordinance is not aimed at prohibiting offensive speech, but at combating the "undesirable secondary effects of such businesses."
>
> M.   The Warren Zoning Ordinance is designed to serve a substantial government interest.  There is an obvious relationship between a business and the adjacent properties, which the Warren Zoning Ordinance was designed to address.
>
> N.   The property at 32778 Van Dyke Avenue abuts a residential district.  The Warren Zoning Ordinance is designed to combat the negative effects that adult businesses would have on such areas.

(*Warren Gifts, LLC v. City of Warren*, at 5-6).

Exhibit 2 to Defendant's Motion consists of Warren City Council Meeting Minutes for a meeting held on October 11, 2005.  The minutes for that meeting reflect that the City Council discussed amending the ordinances for SOBs and include that:

> Scott D. Bergthold stated that this would be a short supplement to the extensive discussion of June 10, 2005, in which amendments that would strengthen the Constitutionality of the code were discussed.  There was previously a presentation before City Council on the extensive secondary effects data it received several months ago.  Tonight, he would add affidavits from the police department and accompanying Michigan State Police department report outlining illicit sexual activity that has occurred in sexually oriented businesses.  That was further evidence of the negative secondary effectives of adult uses.  The language of the ordinance has been updated and strengthened.  And it took into account recent cases such as those decided since June 10th of this year the 6th Circuit Court of Appeals, upon which the City of Warren relied in adopting this ordinance, including *Cincinnati v. Union Township*, which was decided by the full Court on June 21, 2005.  More recent cases were also included.
>
> . . . .
>
> Mr. Bergthold stated that the questions showed that the colloquy, discussions, and the extensive review of secondary effects information reinforced the fact that City

10

Council was intent on doing what was Constitutionally permissible and sound and also effective to address the negative secondary effects of adult businesses.

Councilwoman Moore stated that this Ordinance was a long time coming, and a great deal of hard work had gone into it.

Chairman Fouts stated that based on the expert witness and the City Attorney's Office, he would vote in favor of this.

Council woman Kamp and Councilwoman Moceri stated that they were in agreement with regard to the suggested amendments and they would be part of the motion.

(Ex. 2 to Def.'s Br.)  A motion was then made to adopt the ordinance with the suggested

amendments, and the motion carried unanimously.  (*Id*.).

Exhibit 8 to Defendant's motion is the "Resolution to Adopt Moratorium Prohibiting The

Location Of Any Sexually Oriented Business Within The Downtown Development District And

The Van Dyke TIFA Authority District Boundaries," which states, in pertinent part:

> The City of Warren has adopted an ordinance regulating sexually oriented businesses *in order to promote the health, safety and general welfare of the citizens of the City* as set forth in Chapter 6 of the Warren Code of Ordinances; and has adopted locational criteria for sexually oriented businesses in the Zoning Ordinance, section 14.01.
> In addition, the City of Warren has authorized a Downtown District in Chapter 2 of the Code of Ordinances *for the purpose of halting property value deterioration, eliminate the causes of deterioration*; and promote development and economic grown, among other states purposes.
> . . . .
> The City Council has requested that to support the mission statement of the T.I.F.A. *to eliminate blight* and create new development, that the Van Dyke TIFA Authority District be included in the proposed amendment to section 14.01 (s) of the Zoning Ordinance . . .

(Ex. 8 to Def.'s Motion) (emphasis added).

Defendants have not submitted copies of the actual reports that were presented to the City

Council.  They state that the reports are "voluminous but were produced in discovery."  (Def.'s

Br. at 9 n. 7). Defendant's Expert Report states that the "factual predicate of the Warren Ordinance includes most of the studies cited below at II.E." and then lists 29 different studies. (Ex. 5 to Def.'s Br. at 8 & 14-15).  Defendant states that copies of the actual reports will be made available to the Court upon request.

Plaintiffs do not dispute that these various secondary-effects reports, gathered by Mr. Bergthold, were presented to the City Council.  Plaintiffs do appear to challenge, however, the City of Warren's reliance on those reports.  (*See* Pls.' Resp. Br. at 13) (Asserting that "the City gave lip service to a series of outdated reports generated for pay on behalf of groups which sought to outlaw sexual expressions" and "As Plaintiffs' expert, Bruce McLaughlin, demonstrates in his Predicate Report, there is no actual reliable evidence that adult businesses present any special risk to any substantial interest.").

To the extent that Plaintiffs challenge the reports on the ground that the reports are not new reports, or that the City of Warren did not prepare the reports itself, such challenges are without merit.  Both the Supreme Court and the Sixth Circuit "have repeatedly held that local governments need not conduct their own studies demonstrating that adverse secondary effects result from the operation of sexually oriented businesses or that the measures chosen will ameliorate these effects."  *Richland Bookmart, Inc.*, 555 F.3d at 524; *see also Bronco's Entertainment, Ltd.*, 421 F.3d at 451 ("A municipality is not required to 'conduct new studies or produce evidence independent of that already generated by other cities to demonstrate the problem of secondary effects,").  Simply stated, the "First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is

12

*reasonably believed to be relevant* to the problem that the city addresses." *Richland Bookmart, Inc.*, 555 F.3d at 524. "Nor are local governments required to demonstrate empirically that its proposed regulations will or are likely to successfully ameliorate adverse secondary effects." *Id.* "Thus, insofar as Plaintiffs merely dispute the relevance of 'foreign' and outdated studies, they fail to create a genuine issue of material fact to survive summary judgment." *Id*.

As explained in *Richland Bookmart, Inc.*, however, "[t]his is not to say that, provided the now-standard list of studies and judicial opinions is recited, no plaintiff could ever successfully challenge the evidentiary basis for a secondary-effects regulation. Albeit light, the burden on the government is not non-existent, and a plaintiff may put forth sufficient evidence to further augment that burden." *Id*. at 524-25. A burden-shifting framework applies with respect to the evidentiary challenges in secondary-effects cases. *See Richland Bookmart, Inc., supra*, at 524-28.

Plaintiffs' briefs do not discuss the burden-shifting framework outlined in *Richland Bookmart, Inc.*, nor do they provide any analysis of how they believe it should be applied here. Thus, the Court does not believe that Plaintiffs are truly challenging the evidentiary basis of the reports the City of Warren relied upon. Moreover, even if they were making such a challenge, the Court does not believe that they would succeed in making such a challenge for the same reasons the challenge in *Richland Bookmart, Inc.* failed:

> It is unnecessary for us to go through every piece of evidence Plaintiffs offer in an attempt to cast doubt on the County's findings and rationale. While the County may rely on evidence from other locations and anecdotal evidence, Plaintiffs' burden is heavier and cannot be met with unsound inference or similarly anecdotal information. Giving Plaintiffs' evidence the most charitable treatment, it suggests merely that the County 'could have reached a different conclusion during its legislative process' with regard the need to regulate some categories of sexually

13

oriented businesses.

*Richland Bookmart, Inc.*, 555 F3d at 527.

This Court further concludes that the challenged ordinances are narrowly tailored to serve a substantial interest. Again, the importance of the City of Warren's "interest in combating the secondary effects of sexually oriented businesses is 'not debatable.'" *Bronco's Entertainment, Ltd.*, 421 F.3d at 451 (quoting *Wojcik v. City of Romulus*, 257 F.3d 600, 614 (6th Cir. 2001)). Moreover, the challenged ordinances apply only to SOBs – the category of establishments shown to produce the unwanted secondary effects.

Like the plaintiffs in *Bronco's Entertainment, Ltd.*, Plaintiffs appear to assert that the ordinances are not narrowly tailored because their geographic restrictions are more stringent than those that were applied to SOBs under the City of Warren's prior ordinances. That argument "misapprehends the nature of the 'narrowly tailored' test in this context. A content-neutral regulation, such as the [ordinances challenged here,] need not be less restrictive than other possible regulations; it need only refrain from 'burden[ing] substantially more speech than is necessary to further the government's legitimate interests.'" *Bronco's Entertainment, Ltd.*, 421 F.3d at 451 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). That test is met here given that the ordinances apply only to SOBs and, as explained below, preserve a sufficient number of channels for such expression.

Under *Renton,* a zoning ordinance will be found to violate the First Amendment if it does not allow for "reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50. The Sixth Circuit has noted that "the Supreme Court has made it clear that alternative sites need not be *viable commercial properties*." *Bronco's Entertainment, Inc.*, 421 F.3d at 452 (Citing *Renton,*

14

*supra*) (emphasis added).  In prior cases, parties attempting to show that sufficient alternative channels do not exist have attempted to discount "certain sites because the sites are occupied or because the current owners might be unwilling to sell to a sexually oriented business" but the Sixth Circuit has held that "[u]nder *Renton,* these factors are irrelevant."  *Id.*

The First Amendment does not require a government to ensure that an adult business will be able to obtain a site.  Rather, the First Amendment "requires only that [the government] refrain from effectively denying respondents a reasonable opportunity to open and operate an adult [business] within the city."  *Renton*, 475 U.S. at 54.

The City of Warren contends that alternative channels of expression are left open.  It states that "[i]n this case, there are 39 alternate sites throughout the various sections in Warren." (Def.'s Br. at 10).  These 39 sites are identified in Exhibit 16 to Defendant's Brief.

The City of Warren asserts that "the fact that some or all of the sites identified as potential alternate SOB locations are occupied by existing businesses, are not currently for sale or lease or are not "commercially viable" for an adult use does not give rise to a First Amendment violation.  *Renton*, at 54; *American Mini Theatres*, at 71 n.35."  (*Id.*).  Even so, it notes that its expert, Alan C. Weinstein has opined that 25 of these 39 sites are actually *viable and available* for SOB use.

Exhibit 15 to Defendant's Motion for Summary Judgment is the "Expert Report of Alan C. Weinstein."  His report includes a section titled, "Findings and Opinions Regarding Alternative Avenues of Communication" that states that the City of Warren has identified four areas as being potentially available for the location of SOBs and further describes those areas as:

2.  Descriptions and Analyses of Individual Areas

15

■     Area 1 - Portions of Section 6 in the Warren Zoning Atlas

Description
Approximately 14 individual sites zoned M-2, all but one improved with
an existing structure, with these structures ranging from approximately
830 sq. ft. to over 33,000 sq. ft.  One of the sites is too small for any
commercial use.  The 13 remaining sites could be used, or could be
reconfigured to be used, as a Sexually Oriented Business.

Analysis
13 sites are potentially available in Area 1.

■     Area 2 - Portions of Section 24 in the Warren Zoning Atlas

Description
One site zoned C2 & M2 improved with a structure of 2,363 sq. ft.

Analysis
One site is potentially available in Area 2.

■     Area 3 - Portions of Section 26 in the Warren Zoning Atlas

Description
Approximately 17 individual sites zoned M-2, all but one improved with
an existing structure, with these structures ranging from approximately
832 sq. ft. to over 86,000 sq. ft.  One of the sites is too small for any
commercial use.  The 16 remaining sites could be used, or could be
reconfigured to be used, as a Sexually Oriented Business.

Analysis
At least 6 sites would be potentially available after sites were combined to
achieve sufficient parking to meet zoning requirements.

■     Area 4 - Portions of Section 28 in the Warren Zoning Atlas

Description
Approximately 7 individual sites zoned M-2, all but one improved with an
existing structure, with these structures ranging from approximately 3,480
sq. ft. to over 65,000 sq. ft.  These 7 sites could be used, or could be
reconfigured to be used, as a Sexually Oriented Business.

Analysis
7 sites are potentially available.

16

(Ex. 15 to Def.'s Motion for Summ. J. at 3-4).

The City asserts that its "alternate locations satisfy even the most recent approaches discussed in *BBI Enters., Inc. v. City of Chicago*, 874 F.Supp. 890, 896 (N.D. Ill. 1995) wherein the court holds that the best measure of adequate alternative locations is evaluation of the relationship between the number of sites available in a city for adult uses and the size of the city's population. *BBI* notes that *Centerfold Club, Inc. v. City of St. Petersburg*, 969 F.Supp. 1288 (M.D. Fla. 1997) recognizes that a proportion of one (1) site per 12,565 residents is inadequate. In this case, however, Warren's alternate sites equates to one (1) site per 3,544 residents according to census results. This is a ratio that is four (4) times greater than that in *Centerfold Club*." (Def.'s Br. at 10-11).

The City also relies on *Jott, Inc. v. Charter Township of Clinton*, 224 Mich.App. 513 (1997) and *Executive Arts Studio, Inc. v. City of Grand Rapids*, 227 F.Supp.2d 731 (W.D. Mich. 2002).

Plaintiffs, on the other hand, contend that the locational restrictions of the City's 2006 Ordinance do not leave adequate alternative avenues of expression available and are therefore unconstitutional.

In responding to the City's motion, Plaintiffs note that according to the City's own calculations, "there exist, *at most*, 39 parcels of land" on which an SOB could theoretically operate. (Pls.' Resp. Br. at 15) (emphasis in original). Plaintiffs assert that those parcels "comprise only 46 out of 22,000+ acres in the City, or two tenths of a percent (.2%) of the total property in Warren and only .8% of the commercial and industrial zoned property in Warren." (Pls.' Resp. Br. at 15).

17

Plaintiffs rely heavily on *Executive Arts*.  They assert that the district court in that case "struck down the Grand Rapids ordinance because the .8% of commercial property and .06% of overall land in Grand Rapids available to adult bookstores failed to provide adequate alternative avenues."  (Pls.'s Resp. Br. at 18).  Plaintiffs assert that *Executive Arts* is "particularly suited for application herein as Grand Rapids is the second largest city in Michigan with approximately 28,000 acres and Warren is Michigan's third largest city with approximately 22,000 acres and similar proportionate populations."  (*Id.*).  Plaintiffs assert that the City of "Warren's ratios for SOBs are more meager than were Grand Rapids'," and on that ground alone, the City of Warren's "ordinance must be found to violate the First Amendment on its face for failing to consider or provide constitutionally required alternate avenues for protected expression."  (*Id.*).

Whether an ordinance leaves open adequate alternative channels of communication is an issue that must be decided based on the specific facts of each case.  *Christy v. City of Ann Arbor*, 824 F.2d 489, 491 (6th Cir. 1987).

To date, the Sixth Circuit has not identified a minium number of sites, or percentage of acreage, that must be available to provide sufficient channels of communication.  Moreover, while other circuits have set forth various criteria for determining whether a sufficient number of sites exist (*see e.g., Boss Captial, Inc. v. City of Casselberry*, 187 F.3d 1251, 1254 (11th Cir. 1999); *Young v. City of Simi Valley*, 216 F.3d 807 (9th Cir. 2000)), the Sixth Circuit has not done so, nor has it formally[1] adopted the approaches of these other circuits.

In *Boss Capital*, the Eleventh Circuit held that the following factors may be considered:

---

[1]In *Executive Arts*, the Sixth Circuit noted that the district court looked to the factors in *Boss Capital*.  However, it did not expressly adopt the approach or apply the various factors set forth in *Boss Capital*.

1) the size of the population; 2) geographical size; 3) the number of acres available to adult uses as a percentage of geographic size; 4) the location of the sites within the municipality; 5) the number of adult entertainment establishments currently in existence; and 6) the number of adult entertainment establishments wishing to operate within the municipality.  *Boss Capital*, 187 F.3d at 1254.  The Ninth Circuit considers similar factors.  *Young,* 216 F.3d at 822.

Thus, there are at least two different ways in which this Court could approach this issue. As the district court in *Executive Arts* noted, one measure is simply a comparison of the number of sites here to those in other cases.  *Executive Arts*, 227 F.Supp.2d at 754.  Another way of deciding the issue would be to consider the various factors considered by other circuits.

In *Renton*, the Supreme Court found that the challenged ordinance allowed for "reasonable alternative avenues of communication" where it left "520 acres, or more than five percent of the entire land area of Renton," open to use for adult businesses.

There are few decisions within the Sixth Circuit following *Renton* that directly address the issue of whether a sufficient number of sites exist.   If this Court were to base its ruling on those cases, the Court would find that reasonable alternative avenues of communication exist here.

In *Bronco's Entertainment, Ltd.*, the plaintiffs asserted that Van Buren Township's ordinance violated the First Amendment by unduly restricting expressive activity.  The district court ruled that the township adopted the challenged ordinance to combat the secondary effects of SOBs and held that sufficient channels of expression were left open.  The Sixth Circuit affirmed.  In doing so, it noted that the "record supports the district court's finding that numerous channels of expression are available to [SOBs] in the township.  The township presented detailed

maps and other evidence demonstrating that 48 sites could be used under the current geographic restrictions and that 27 of these sites are 'easily developed.'" *Bronco's Entertainment, Ltd.*, 421 F.3d at 451. The Sixth Circuit further noted that the 27 easily developed sites equated to roughly one for every 900 residents of the township.

The plaintiff in *Jott, Inc*. claimed that Clinton Township's ordinance was unconstitutional because it fails to allow for reasonable alternative avenues of communication. The Michigan Court of Appeals affirmed the trial court's decision that the challenged ordinance is a constitutionally valid time, place, and manner restriction. The appellate court held that "12 sites totaling 50.97 acres represents a reasonable opportunity under Ordinance 260 for Jott, Inc. to open and operate a topless bar within the Township." *Id*. at 534.

In *CLR Corp. v. Henline*, 702 F.2d 637 (6th Cir. 1983), the Sixth Circuit found the challenged ordinance did not allow for reasonable alternative avenues of communication where its impact was to permit only two to four restricted uses and those would be in a half-mile strip of the 25 square mile city of Wyoming, Michigan.

In *Executive Arts*, 227 F.Supp.2d 731 (W.D. Mich. 2002), the district court found that the challenged ordinance, as applied, does not allow for adequate alternative channels of communication. The evidence presented by the parties established that there were either six or seven sites available for adult uses within the City of Grand Rapids, which comprised approximately 16.7 acres or .88% of the commercial area of the city.

Although the court found this was insufficient as applied, the court expressly noted that it "might still conclude the number of sites (6 or 7) to be adequate if the uses regulated by Article 25 of the Zoning Ordinance were limited solely to adult bookstores or adult uses. That, however,

20

is not the ordinance at issue.  Article 25 of the Zoning Ordinance casts a broad net over various

unrelated businesses, rendering them subject to the same locational restrictions as adult uses."

*Id*. at 755.  This is because the definition of "adult book store" in the ordinance at issue

encompassed far more than businesses whose principal activity was the sale of adult material.  It

included businesses that offered only a small amount of sexually-explicit materials for sale.  As a

result, it covered many types of businesses that are not typically viewed as adult businesses,

"such as a video store with a single shelf of sexually-explicit videos, a book store such as

Schuler's Bookstore which has art books depicting the human anatomy, or a party/convenience

store with a small section of sexually-explicit magazines."  *Id*. at 745.  The challenged ordinance

here, unlike the ordinance at issue in *Executive Arts*, does not contain an overly broad definition

of SOBs.

The Sixth Circuit affirmed in *Executive Arts Studio, Inc.v. City of Grand Rapid*, 391 F.3d

783 (6th Cir. 2004).  In doing so, it explained:

> [W]hen this ordinance is applied to Executive Art's situation, it is evidence that it
> fails constitutional scrutiny.  This can generally only be perceived when Executive
> Arts sought a site for its business, *for absent the additional regulated activities
> from which Executive Arts must maintain a distance, along with the increased
> number of these establishments due to the broad use of 'segment or section' in the
> ordinance, it would appear that sufficient sites would be potentially available.*

*Id.* at 797 (emphasis added).

In this case, the City of Warren has submitted evidence to establish that 39 sites are

available for SOBs, 25 of which are viable and actually available for SOB use.  That is

considerably more than: 1) the two to four sites that were found insufficient in *CLR*; 2) the 12

sites that were found sufficient in *Jott, Inc*.; and 3) the 6 or 7 sites that were found inadequate in

21

*Executive Arts*.  The number of sites is most comparable to the 48 sites, 27 of which were easily developed, that were found sufficient in *Bronco's Entertainment, Inc.*  Based on these cases, the Court finds that reasonable alternative avenues of communication exist here.

As stated *supra*, although the Sixth Circuit has not formally adopted such an approach, other circuits have set forth various criteria for determining whether a sufficient number of sites exist, including:  1) the size of the population; 2) geographical size; 3) the number of acres available to adult uses as a percentage of geographic size; 4) the location of the sites within the municipality; 5) the number of adult entertainment establishments currently in existence; and 6) the number of adult entertainment establishments wishing to operate within the municipality. *Boss Capital*, 187 F.3d at 1254.  Even if this Court were to consider these factors, however, the Court's conclusion would not change.

One factor that other courts consider is population, geographic size, and percentage of geographic size.  The City of Warren, Michigan is located in Southeastern Michigan.  The United States Census Bureau reports that in 2000, Warren's population was 138,247.  *See* www.quickfacts.census.gov.  The Census Bureau reports that Warren is comprised of 34 square miles, which equates to 21,760 acres.  Here, 46 acres out of approximately 22,000 acres is available for use by SOBs.  The parties agree that works out to be approximately .8% of all commercial property.  That is roughly the same percentage that was seen in *Executive Arts*, which may have been sufficient if it had not been for the very broad definition of adult book store in the ordinance.

One district court within the Sixth Circuit has stated that courts "have generally found the number to be inadequate if fewer than a dozen sites, or under 1% of the city acreage, is

22

potentially available." *Dia v. City of Toledo*, 937 F.Supp. 673, 678 (N.D. Ohio 1996).  Here, far more than a dozen sites are available and those parcels comprise just under one percent of the City's commercial property.

Another factor that courts consider is the ratio of available sites and population.  Here, the available sites work out to a ratio of 1 site per 3,544 residents (population of 138,247 divided by 39).  That is less favorable than the 1 site per 900 residents ratio that was sufficient in *Bronco's Entertainment.*  It is, however, significantly more favorable than the ratio in *Executive Arts*, which amounted to 1 site per 13,186.  Again, the sites in *Executive Arts* may have been sufficient if it had not been for the very broad definition of adult book store in the ordinance.

The Eleventh Circuit has stated that the number of SOBs in existence is a factor to be considered.  Moreover, both the Eleventh and Ninth Circuits direct that evidence regarding supply and demand should be considered.  In a footnote in *Executive Arts*, the Sixth Circuit appeared to agree that evidence regarding supply and demand for SOBs may be relevant to the inquiry.  *Executive Arts*, 391 F.3d at 790 n.3 (citing *North Avenue Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 445 (7th Cir. 1996)).

In *North Avenue*, the Seventh Circuit held that sufficient alternate channels of communication existed where between 22 and 56 locations for SOBs existed in the City of Chicago.  In so holding, the court noted that the evidence before it included that the "Chicago Zoning Administrator testified that his office receives only about 4 or 5 inquiries per year concerning possible adult use locations."

Here, there is one SOB that currently exists in the City of Warren – Jon Jon's Lounge, an adult cabaret located at 28039 Mound Road that offers semi-nude entertainment.  (*See* Wojno

Affidavit).  Jon Jon's Lounge was established in 1996 and recently expanded.  (*Id.*; *see also*

Cerrito Affidavit at ¶ 4).

Aside from the license sought by Plaintiffs, the City of Warren has received only one

other application for a SOB during the last five years.  (Wojno Affidavit).  The Court believes

that the fact that only two licenses for SOBs have been requested in the last five years further

supports the Court's finding that 39 potential new sites, in addition to the currently existing adult

cabaret, provide for sufficient alternate channels of communication.

B.      Are The SOB Licensing Ordinances An Unconstitutional Prior Restraint On Protected
        Expression?

There are two types of constitutional challenges to an ordinance: 1) facial challenges; and

2) applied challenges.  The Sixth Circuit has explained the distinction between "facial" and

"applied" challenges to legislative enactments as follows:

> A court may hold a statute unconstitutional either because it is invalid "on its
> face" or because it is unconstitutional "as applied" to a particular set of
> circumstances.  Each holding carries an important difference in terms of outcome:
> If a statute is unconstitutional as applied, the State may continue to enforce the
> statute in different circumstances where it is not unconstitutional, but if a statute is
> unconstitutional on its face, the State may not enforce the statute under any
> circumstances.  Traditionally, a plaintiff's burden in an as-applied challenge is
> different than from that in a facial challenge.  In an as-applied challenge, "the
> plaintiff contends that application of the statute in the particular context in which
> he has acted, or in which he proposes to act, would be unconstitutional."
> Therefore, the constitutional challenge is limited to the plaintiff's particular
> situation.

*Ross v. Duggan*, 113 Fed.Appx. 33 (6th Cir. 2004) (quoting *Women's Medical Professional*

*Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997)).

Here, Plaintiffs appear to make only a facial challenge to the SOB Licensing Ordinances.

(*See* Pl.'s brief at 15 asserting that the "City of Warren's SOB licensing scheme, *though perhaps*

*facially constitutional*," is unconstitutional as applied to Plaintiffs) (emphasis added).

Nevertheless, the Court does not view that statement as an "admission" that the ordinances are

facially constitutional.  The Court will therefore consider both types of challenges.

      1.     <u>Are The SOB Licensing Ordinances, On Their Face, Unconstitutional Prior Restraints On Protected Expression?</u>

A prior restraint exists when the exercise of a First Amendment right depends on the prior

approval of public officials.  *Bronco's Entertainment, Inc*., 421 F.3d at 444 (citing *Deja Vu of*

*Nashville, Inc. v. Metropolitan Government of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001)).

Prior restraints are presumptively invalid because of the risk of censorship associated

with the vesting of unbridled discretion in governmental officials and the risk of indefinitely

suppressing speech when a licensing law fails to provide for the prompt issuance of a license.

*Bronco's Entertainment, Inc.,* 421 F.3d at 444.  To overcome the presumption of invalidity, a

scheme for licensing sexually oriented businesses must incorporate procedural safeguards.  *Id.*

In *Richland Booksmart, Inc*., the Sixth Circuit held that "*prompt judicial review* and

*preservation of the status quo* are the only constitutionally indispensable procedural safeguards."

*Richland Booksmart, Inc*., 555 F.3d at 533 (emphasis in original).  The court concluded that the

SOB licensing scheme before it was indeed a prior restraint on protected speech.  *Id.* at 532.  It

also explained, however, that "prior restraints are not unconstitutional per se."  *Id*. at 533.  It then

proceeded to analyze whether the SOB licensing scheme before it met the requirements of

providing for prompt judicial review and preservation of status quo.  The court concluded that

the SOB licensing scheme before it satisfied both constitutional requirements where it: 1)

provides for prompt judicial review of a revoked license (Sec. 11); 2) provides for the

25

preservation of the status quo while a license application is pending and while an appeal from a revocation of the license is pending: Sec. 5(a) states that a Temporary License shall be issued to an applicant within 24 hours, valid until a decision to grant or deny a license has been made, which is to occur within 20 days of application; and Sec. 11(b) states that a Provisional License shall be issued to any business initiating court action to challenge a license denial, suspension or revocation.

As Defendants note (Response Br. at 10-11), the licensing scheme at issue here is essentially *the same licensing scheme* analyzed and held facially constitutional in *Richland Booksmart, Inc.*:

| Richand Booksmart, Inc. | This Case: |
|---|---|
| Provides prompt review of a revoked license (Sec. 11) | Provides for prompt review of a revoked license (Sec. 6-299). |
| Provides for the preservation of the status quo while a license application is pending and while an appeal from a revocation of the license is pending:<br><br>Sec. 5(a) states that a Temporary License shall be issued to an applicant within 24 hours, valid until a decision to grant or deny a license has been made, which is to occur within 20 days of application. | Provides for the preservation of the status quo while a license application is pending and while an appeal from a revocation of the license is pending:<br><br>Sec. 6-285(a) provides that a temporary license shall be issued to an applicant "upon the filing of a completed application," valid until a decision of the City to grant or deny a license has been made, which is to occur within 20 days of application. |
| Sec. 11(b) states that a Provisional License shall be issued to any business initiating court action to challenge a license denial, suspension or revocation. | Sec. 6-299(b) states that a provisional license shall be issued to any business initiating court action to challenge a license denial, suspension, or revocation. |

Thus, under *Richland Booksmart, Inc.*, the licensing scheme here satisfies both requirements. On their face, therefore, the City of Warren's SOB Licensing Ordinances are not an unconstitutional prior restraint.

Accordingly, in order to establish a constitutional violation with respect to these ordinances, Plaintiffs must establish that the SOB Licensing Ordinances are an unconstitutional

prior restraint *as they have been applied to them.*

2.      Are The SOB Licensing Ordinances Unconstitutional Prior Restraints As Applied To Plaintiffs?

Plaintiffs assert that the SOB licensing ordinances are an unconstitutional prior restraint because, even if facially valid, they are unconstitutional as applied to them by the City of Warren.

As the City notes, Plaintiffs' briefs do not provide any standard for an analysis of this claim, nor do they cite to any cases where a court has held that such an "as applied" violation occurred.

Rather, Plaintiffs appear to take the position that a constitutional violation somehow occurs if they can establish that the City of Warren failed to comply with *any* of the various provisions in its SOB licensing scheme.  They do not provide any authority to support such a position and the Court finds it to be without merit.

In order for a SOB licensing scheme to constitute an unconstitutional prior restraint on its face, the licensing scheme must fail to meet one of the only two constitutionally indispensable procedural safeguards: 1) prompt judicial review or 2) preservation of the status quo.  *Richland Booksmart, Inc.*, *supra; see also East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220 (6th Cir. 1995) (the following two safeguards are essential: "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied.").

Thus, to show that the SOB licensing scheme is an unconstitutional prior restraint as actually applied to them, Plaintiffs must show that *in their particular situation* they were not

27

*actually afforded* either: 1) prompt judicial review or 2) preservation of the status quo.  In other words, the failures that the Plaintiffs complain of must go to one these two constitutionally required procedural safeguards.  Just asserting that the City failed to follow some provision contained in its ordinances is not enough to establish a constitutional violation.

> a.  Did The City Of Warren Fail To Make A Decision Within
>     A Constitutionally Reasonable Time Period?

Plaintiffs assert that "a licensing ordinance that permits public officials to effectively deny an application by sitting on it indefinitely" is invalid.  Plaintiffs appear to assert that the SOB licensing scheme is an unconstitutional prior restraint, as applied to them, because they did not receive a decision on their SOB application until twenty-four (24) days after it was submitted, as opposed to the 20 days specified in the City's ordinance.  Plaintiffs have not cited a single case in support of this position.

The Court agrees with Plaintiffs that a city could have a licensing scheme that is constitutional on its face but is nevertheless unconstitutional as applied to their particular situation.  In *H.D.V. Greektown, L.L.C. v. City of Detroit*, 2008 WL 441487 (E.D. Mich. 2008), the plaintiffs challenged a city's zoning ordinance and made both a facial and as-applied challenge.   Although the trial court determined that the ordinance was not unconstitutional on its face, it nevertheless concluded that the ordinance was unconstitutional as applied to the plaintiffs.  In doing so, it noted that the city had failed to actually act on the plaintiffs' sign permit applications for *over a span of three years*.

Thus, even though the City of Warren's SOB licensing scheme is facially constitutional and requires that a decision on an application to be made within a specified period of 20 days, the

licensing scheme could be deemed unconstitutional, as applied, if the City actually failed to render a decision on Plaintiffs' application within a constitutionally reasonable amount of time. Twenty-four days, however, is not a constitutionally unreasonable period of time under the existing case law. *See e.g., Bronco's Entertainment, Inc*., 421 F.3d at 448 ("We believe that the time period within which the township must grant or deny an application for a license - a total of 44 business days," is "sufficiently brief.")

Accordingly, the Court concludes that Plaintiffs' argument that the SOB licensing scheme constitutes an unconstitutional prior restraint because, as applied to them, they were not given a decision on their application within a constitutionally reasonable period of time, is without merit.

> b.   Did The City Of Warren Fail To Preserve The Status Quo While
>       Plaintiffs' Application Was Pending?

Plaintiffs also assert that the City failed to maintain the status quo while their application was pending and note that the City did not grant Plaintiffs a temporary license after submission of their application.

Temporary permits issued upon the submission of a completed application "are *one way* to comply with" the constitutional requirement that any restraint imposed in advance of a final judicial determination on the merits must be limited to the preservation of the status quo. *Deja Vu of Cinncinnati v. Union Twp. Bd. Of Trustees*, 411 F.3d 777, 778 (6th Cir. 2005) (emphasis added).  They are not the *only way* of adequately preserving the status quo and are not required to pass constitutional muster. *Id.* (noting that the "resolution in the present case also provides for an additional First Amendment safeguard not contained in the ordinance that was upheld by the

court in *Littleton*[2] – the issuance of a temporary permit.").

In *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220 (6th Cir. 1995), the plaintiffs asserted that the licensing scheme at issue did not maintain the status quo pending judicial review. "Specifically, plaintiffs [asserted] that an applicant denied a permit must be allowed to operate pending judicial review." *Id.* at 225. The Sixth Circuit rejected that argument, explaining that the "status quo for a business seeking a permit to begin operating a sexually oriented business" is "non-operation. The city, therefore, does not need to allow operation pending review." It explained that "[a]t least in the case of a permit denial,"[3] the constitution "does not require more."

The Court therefore concludes that Plaintiffs' argument that the SOB licensing scheme constitutes an unconstitutional prior restraint because, as applied to them, the status quo was not preserved while their application was pending, is without merit.

Accordingly, the Court concludes that Plaintiffs cannot establish that the SOB licensing scheme constitutes an unconstitutional prior restraint, either facially or as applied to them.

II.   Should This Court Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims?

Given that the Court's ruling that the City of Warren is entitled to summary judgment with respect to Plaintiffs' federal claims, the Court must consider whether it should exercise supplemental jurisdiction over the remaining state law claims.

The applicable statute regarding supplemental jurisdiction, 28 U.S.C. § 1367, provides, in

---

[2]*City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004).

[3]Instances where a SOB is already licensed and operating, and then has its permit revoked, present a different situation but that is not the situation presented here.

pertinent part, that district courts may decline to exercise supplemental jurisdiction over a claim

when:

> 1) the claim raises a novel or complex issue of State law;
> 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> 3) the district court has dismissed all claims over which it has original jurisdiction, or
> 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In *Moon*, the Sixth Circuit addressed the issue of supplemental jurisdiction (also referred

to as pendent jurisdiction) and reversed a district court's decision to exercise supplemental

jurisdiction following dismissal of all federal claims in the case.  *Moon v. Harrison Piping*

*Supply,* 465 F.3d 719 (6th Cir. 2006).  In doing so, the court stated:

> [A] federal court that has dismissed a plaintiff's federal-law claims should not
> ordinarily reach the plaintiff's state-law claims.  *See* 28 U.S.C. § 1367(c)(3);
> *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16
> L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial,
> even though not insubstantial in a jurisdictional sense, the state claims should be
> dismissed as well."); *Hankins v. The Gap, Inc*., 84 F.3d 797, 803 (6th Cir. 1996);
> *Gaff v. Fed. Deposit Ins. Corp*., 814 F.2d 311, 319 (6th Cir. 1987); *Landefeld*, 994
> F.2d at 1182.

*Id*. at 728.  "Residual jurisdiction should be exercised only in cases where the 'interests of

judicial economy and the avoidance of multiplicity of litigation" outweigh our concern over

'needlessly deciding state law issues."  *Id*. (quoting *Landefeld,* 994 F.2d at 1182).  The court

further noted that in the "ordinary case," the exercise of pendent jurisdiction is improper.  *Id.*

The Court does not believe that interests of judicial economy outweigh the concern over

needlessly deciding issues of state law here.  This Court therefore declines to exercise

31

jurisdiction over the remaining state law claims.

CONCLUSION AND ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED.

It is further ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART.  The Motion is GRANTED to the extent that the Court grants summary judgment in favor of Defendant with respect to Plaintiffs' federal claims.  The Court DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION over Plaintiffs' remaining state law claims and therefore DISMISSES those claims.

IT IS SO ORDERED.


                                        S/Sean F. Cox
_____
                                        Sean F. Cox
                                        United States District Judge

Dated:  September 17, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 17, 2009, by electronic and/or ordinary mail.

                                        S/Jennifer Hernandez
                                        Case Manager